IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Angelo Ham,<br><br>              Plaintiff,<br><br>    vs.<br><br>C. West, Dillman, Jack Brown,<br>C. Brown, Bruce Oberman, Anthony<br>J. Padula, James C. Dean, Washington<br>Barbara Reames, and Doris Poole,<br><br>              Defendants. | Civil Action No. 6:12-3219-JMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion for summary judgment (doc. 29). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

On January 4, 2013, the undersigned recommended that defendants West and Dillman be served with the plaintiff's complaint as the plaintiff's allegations (that these two defendants violated his constitutional rights by failing to protect him from being assaulted by his cellmate) were sufficient to survive summary dismissal. The undersigned further recommended that the remaining named defendants be summarily dismissed as the complaint failed to state a plausible claim against them. That report and recommendation is currently pending before the Honorable J. Michelle Childs, United States District Judge. On March 28, 2013, the defendants filed a motion for summary judgment (doc. 29). By order filed that same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. After requesting and

receiving several extensions of time, the plaintiff filed his response in opposition to the motion for summary judgment on August 5, 2013 (doc. 61).

## **FACTS PRESENTED**

The plaintiff is currently, and was at the time of the events alleged in his complaint, incarcerated in the Special Management Unit ("SMU") at Lee Correctional Institution. The plaintiff alleges that on February 13, 2012, defendant correctional officers West and Dillman took him from his cell for a shower, but the plaintiff's cellmate was not taken because the cellmate said he did not want a shower. The plaintiff alleges:

> [W]hile he was on his way back to his cell, Defendant West opened his cell door, at which time his cellmate rushed out of his cell with a piece of steel stabbing the Plaintiff in the head and three times in [his] shoulder close to [his] neck area. Plaintiff states that since this incident, he has suffered from headaches, dizziness, nightmares and flashbacks.

(Comp. at 4). The plaintiff seeks: (1) a preliminary and permanent injunction ordering the his "separation from the Defendants and Jamie Gilbert" (the cellmate who allegedly assaulted the plaintiff); (2) an unspecified amount of nominal damages; (3) compensatory damages of $100 for each day that he "suffered from such pain" against each of the defendants, jointly and severally; and (4) punitive damages of $100 per day that he "suffered from such pain" against each of the defendants, jointly and severally (*id.* at 6).

According to the affidavits, incident reports, and "use of force" forms submitted by the defendants in support of their summary judgment motion, while defendants Corporal C. West and Officer A. Dillman were placing the plaintiff back in his cell after his shower, the plaintiff's cellmate, Jamie Gilbert, appeared to be asleep in the cell. Corporal West called out to the cellmate, who did not respond. When Corporal West opened the cell door, Gilbert threw off his blanket and rushed toward the plaintiff with a blunt object, hitting the plaintiff in the head. Corporal West tried to grab Gilbert's arm and prevent the assault. While Officer Dillman secured the plaintiff, Corporal West struggled with Gilbert, and Gilbert pushed him down. Gilbert ran toward the stairs where he was met by Officer L. Thompson. Officer Thompson grabbed Gilbert but lost his balance and was dragged down the stairs

by the fleeing inmate. Corporal West ran after them and observed Officer Thompson holding the inmate's leg to immobilize him. Corporal West approached to assist Officer Thompson. Gilbert resisted verbal and physical attempts to gain control. Corporal West administered a one palm heel strike to Gilbert's facial area. He and Officer Thompson restrained Gilbert, and both the plaintiff and Gilbert were seen by medical staff and were treated for minor injuries. During the altercation, Corporal West noticed a large swollen area around Gilbert's eye and surmised that the two inmates had a previous unreported altercation (*see* docs. 29-2 to 29-10).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise,

3

conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

## *Failure to Protect*

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, "[n]ot every injury suffered by a prisoner at the hands of another establishes liability against a prison official . . . ." *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010). As the Fourth Circuit recently stated in *Bacchus v. Scarborough*,

> To establish a claim for failure to protect, an inmate must show: (1) "serious or significant physical or emotional injury," and (2) that prison officials exhibited deliberate indifference to inmate health or safety. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks omitted). To be deliberately indifferent, a prison official must "know of and disregard an objectively serious ... risk of harm." *Id*. A showing of mere negligence does not qualify as deliberate indifference. *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir.1999).

466 F. App'x 269, 271 (4th Cir. 2012). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 837.

The plaintiff argues that an objectively serious risk of harm existed because he was housed in the SMU and the "inmates in SMU are the most violent, dangerous and disruptive inmates in the institution." He further argues that the defendants did not comply with SCDC policy requiring that SMU inmates be restrained with leg irons and security

4

cuff/belly chains and /or lead chains whenever exiting their cells. Thus, he contends the defendants "indeed possessed a culpable state of mind and [were] negligent in their actions" (doc. 61, pl. resp. m.s.j. 3-4).

In order to prove the objective element of his claim, the plaintiff "must do more than allege a generalized concern for his safety and welfare." *Drayton v. Cohen*, C.A. No. 2:10-3171-TMC, 2012 WL 666839, at *7 (D.S.C. Feb. 29, 2012). Even if the plaintiff could show some policy violation, allegations that defendants have not followed their own policies or procedures, standing alone, do not amount to constitutional violations. *Riccio v. County of Fairfax, Virginia*, 907 F.2d 1459, 1469 (4th Cir.1990). Clearly, prisons are dangerous places, and "in a prison setting, confrontations among inmates are daily occurrences." *Drayton*, 2012 WL 666839, at *6. However, unless a prison official actually makes the inference that a substantial risk of serious harm exists, "he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy." *Id.* (citing *Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997)). "Further, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence." *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

The plaintiff has failed to show that the defendants knew of and disregarded an objectively serious risk of harm to him. *See Baze v. Rees*, 553 U.S. 35, 50(2008) (noting that the Eighth Amendment protects against a risk of future harm that is "'sure or very likely to cause serious illness and needless suffering'") (quoting *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). The plaintiff has not presented any evidence that his cellmate posed a serious risk of violence to him, and he does not allege that he warned officers of any threat by his cellmate. The record indicates that once the attack began, the defendants moved the plaintiff out of the way, put themselves between the plaintiff and his attacker, and used force to subdue the cellmate. Based upon the foregoing, the record cannot, as a matter of law, support a failure to protect claim.

5

***Qualified Immunity***

The defendants further argue that they are entitled to qualified immunity as their conduct did not violate any clearly established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.* In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999). As discussed above, the plaintiff has failed to show that the defendants violated any of his constitutional or statutory rights. Therefore, the defendants are entitled to the protections afforded by the doctrine of qualified immunity.

***Eleventh Amendment Immunity***

The defendants are employees of the SCDC and thus are not subject to suit under § 1983 when sued in their official capacities. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir.1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment

6

immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, the defendants are entitled to Eleventh Amendment immunity to the extent the plaintiff has alleged claims against them in their official capacities.

*State Law Claims*

Having found that the defendants are entitled to summary judgment regarding the plaintiff's constitutional claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief construed by the court to be asserted pursuant to state law. *See* 28 U.S.C. § 1367(c)(3).

**CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 29) be granted.

IT IS SO RECOMMENDED.

October 28, 2013  s/ Kevin F. McDonald
Greenville, South Carolina  United States Magistrate Judge

7

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 300 East Washington Street
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).